# United States District Court

## For The District of Wyoming



**FILED**

8:29 am, 7/18/16

**U.S. Magistrate Judge**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

vs.

TRUE OIL, LLC, a Wyoming limited liability
company, et al.,

        Defendants.

Civil No. 15-CV-74-KHR

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. 41] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 45] AS MOOT

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. 41], Plaintiff's Motion for Partial Summary Judgment [Doc. 45], and Plaintiff's Objection to Exhibits O and P Submitted with Defendants' Memorandum in Support of Their Motion for Summary Judgment [Doc. 47]. The Court, having carefully considered the Motions and Responses, and the parties' oral arguments from July 13, 2016, FINDS:

### BACKGROUND

This case arises from a direct charge of discrimination issued by the Equal Employment Opportunity Commission (EEOC) to True Oil, LLC, Belle Fourche Pipeline Co., Black Hills Trucking, Inc., Bridger Pipeline, LLC, Butte Pipeline Co., Eighty-Eight Oil, LLC, Equitable Oil Purchasing Co., Toolpushers Supply Co., True Drilling, LLC, and True

Ranches, LLC (True Companies).[1] First Am. Compl. 5, Oct. 1, 2015, ECF No. 22. Specifically, the EEOC alleges True Companies have violated the Equal Pay Act (EPA) since May 2010 by paying a male accounting clerk, Ken Harris, a higher wage than female accounting clerks, Debi Kuhn and Connie Hindt. First Am. Compl. 6-8. True Companies refute the charge issued by the EEOC and maintain Mr. Harris was paid a higher wage because of the greater skill and effort necessary to perform his distinct duties. Defs.' Answer to Am. Compl. 5-6, Oct. 15, 2015, ECF No. 26. The EEOC seeks a permanent injunction to prevent True Companies from engaging in wage discrimination, a court order requiring True Companies to institute policies to provide equal employment, and appropriate back wages.[2] First. Am. Compl. 9.

## THE STRUCTURE AND POLICIES OF TRUE COMPANIES

True Companies are owned and managed by the True Family, including David and Hank True, and their children, Thea True Wells, Tad True, Barbara True, and Shane True. Dep. of David True 13:19-22, 17:11-12, 20:14-15, 22:13-14, 24:4-7, 26:3-4, 27:2-3, 28:2-3, Apr. 5, 2016. Although True Companies are managed by the same personnel, each company is a separate entity engaged in a separate business. True Oil, LLC is a company dedicated to the discovery and production of crude oil and natural gas. Dep. of Jozwik 26:20-29:25, Mar. 29, 2016. The pipeline companies, Belle Fourche Pipeline Co., Bridger Pipeline, LLC, and

---

[1] The EEOC is entitled to file suit directly against an employer under the EPA. *Washington Cnty. v. Gunther*, 452 U.S. 161, 175 n.14 (1981). Accordingly, it is evident to the Court that the EEOC's maintains standing for this action. First Am. Compl. 5; Defs.' Memo. of Law in Supp. of their Mot. for Summ. J. 2, June 8, 2016, ECF No. 42.

[2] It is not clear from the First Amended Complaint whether the EEOC solely seeks back wages for Ms. Kuhn and Ms. Hindt or if there are potentially other accounting clerks entitled to back wages. First. Am. Compl. 9. However, the EEOC represented at the Dispositive Motions Hearing that it was only seeking back wages for Ms. Kuhn and Ms. Hindt.

Butte Pipeline Co.,[3] each operate pipelines for the purpose of transporting oil and gas. Dep. of Powell 19:3-16.  Black Hills Trucking, Inc. performs trucking and rigging services for other companies that establish and operate oil fields. Dep. of Hebert 24:20-25-23, Mar. 28, 2016. Both Eighty-Eight Oil, LLC and Equitable Oil Purchasing Co. sell crude oil and fuel and then sell those products to the market. Dep. of Chapman 21:9-22:15, Apr. 5, 2016. Toolpushers Supply Co. is a chain of retail stores across multiple states that sells goods and products utilized in oil fields. Dep. of Madrid 23:20-24:13, Mar. 30, 2016. True Drilling, LLC maintains drilling rigs and True Ranches, LLC operates ranches and feedlots for the purpose of raising, buying, and selling livestock. Dep. of Calkins 22:24- 23:6, Mar. 30, 2016; Dep. of Rutz 96:15-98:20, Mar. 28, 2016.

Despite the independent operations of each of the True Companies, True Oil, LLC employs the controller, human resources employees, legal employees, and accounting employees for True Companies. Defs.' Answers to Pl.'s First Set of Reqs. for Admis. 8-9, 18, Oct. 23, 2015. Within those departments, employees are assigned to different True Companies. Dep. of Park 133:15-24, Apr. 1, 2016.  The departments are all based in True Oil, LLC's headquarters in Casper, Wyoming. Dep. of Chapman 24:6-17. At the end of each year, the other True Companies reimburse True Oil, LLC for the costs associated with maintaining the administrative departments. Dep. of Park 127:2-129:17. All True Companies account on an accrual basis except True Ranches, LLC, which accounts on a cash basis. Dep. or Park 115:15-116:6.

---

[3] A portion of Butte Pipeline Co. is owned by All American Plains Pipelines. Dep. of David True 15:18-20.

True Companies' accounting departments are supervised by the controller. Dep. of Park 18:9-25. Each accounting department has a chief accountant that reports to the controller. Dep. of Park 18:9-25. Below the chief accountants are accounting clerks. The job description for all accounting clerks is the same, and all accounting clerks generally perform data entry. Park Dep. 133:15-24; True Oil LLC Job Descriptions, ECF No. 49-3. The job descriptions are universal and do not specifically identify which of the True Companies the clerk may work for. True Oil LLC Job Descriptions. All accounting clerks are hired, promoted, or fired by the controller. Dep. of David True 31:8-36:12. Furthermore, wages and raises for accounting clerks are set by the controller and then approved by David and Hank True. Dep. of David True 33:22-35:5. True Companies lacks an employee handbook or other written or formal policy to set wages, but wages for accounting clerks differ when there is a "recognition of difference in skill levels [and] differences of a position['s] job requirements." Dep. of Gragg 62:4-7, Mar. 31, 2016; Dep. of David True 34:10-24.

Despite identical job descriptions, accounting clerks assigned to different True Companies engage in different tasks and are not completely interchangeable. Dep. of Calkins 94:13-95:13. Although some accounting clerks transfer between different True Companies, transfers require training to familiarize an accounting clerk with a new company. Dep. of Calkins 85:7-15. Accounting departments within True Companies utilize different software, data, and data entry methods. Dep. of Calkins 85:7-15. Accounting clerks assigned to different True Companies generally experience varied training periods, and clerks assigned to a certain company may be unaware of what tasks clerks assigned to other companies perform. Dep. of Calkins 39:3-25; Dep. of Kuhn 81:15-18, Apr. 4, 2016.

*TRUE COMPANIES' EMPLOYMENT OF KEN HARRIS, DEBI KUHN, AND CONNIE HINDT*

Ken Harris began working for True Companies as an accounting clerk in 2002 for $10.00 per hour. Dep. of Harris 12:14-18, Mar. 28, 2016. From the outset of his employment with True Companies, Mr. Harris was assigned to True Ranches, LLC.  Dep. of Harris 21:3-9.  Prior to working for True Companies, Mr. Harris took one course in accounting from Casper College and entered data for his father, a Certified Public Accountant, for approximately one year. Dep. of Harris 12:3-13:9.

In 2009, the chief accountant for True Ranches, LLC retired. Dep. of Rutz 60:20-22. Rather than hire a replacement, True Companies chose to promote Ken Rutz internally and continue operation of True Ranches, LLC with Mr. Rutz as the chief accountant and Mr. Harris as the sole accounting clerk. Dep. of Rutz 60:8-61:12. Accordingly, Mr. Harris received a pay raise to $17.74 per hour and raises in subsequent years until he reached $21.00 per hour in 2013. First Am. Compl. 6-7.[4] Since 2009, Mr. Harris's job duties have included: accounting for cow-calf operations, maintaining inventory, utilizing "Asset Keeper" to depreciate assets, accounts receivable and accounts payable, payroll deductions, substituting for the chief accountant,[5] communicating with ranch managers and True Companies owners, tracking vehicle registration for True Ranches, LLC, and purchasing equipment. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18.

Debi Kuhn also began working True Companies in 2002 for $10.00 per hour. Dep. of Kuhn 17:21-18:1, 27:23-28:1, Apr. 4, 2016. Since beginning at True Companies, Ms. Kuhn has been assigned to the True Drilling, LLC. Dep. of Kuhn 26:8-11. True Drilling, LLC

---

[4] These amounts were admitted by Defendants in their Answer to Plaintiff's Amended Complaint. Defs.' Answer to Am. Compl. 3, Oct. 15, 2015, ECF No. 26.
[5] Although Mr. Harris filled-in for the chief accountant at True Ranches, LLC on several occasions, he never "closed the books" without review by the chief accountant. Dep. of Rutz 63:20-24.

maintains a five-person accounting department, including the chief accountant. Dep. of Calkins 18:4-8. Before working for True Companies, Ms. Kuhn obtained a certificate in career accounting from Casper College.[6] Dep. of Kuhn 8:15-9:2. Ms. Kuhn's responsibilities include: coding time for welders and mechanics, overseeing accounts payable, auditing expenses, invoicing, issuing vouchers, utilizing Microsoft Excel, and compiling sales tax reconciliations. Dep. of Kuhn 36:1-23. In 2010, True Companies paid Ms. Kuhn $16.93 per hour. First. Am. Compl. 7. Ms. Kuhn's wage rose to $19.67 per hour in 2013. First Am. Compl. 7.

In the relevant time period, Connie Hindt was an accounting clerk assigned to Toolpushers Supply Co.[7] Dep. of Lodball 135:17-23, Mar. 29, 2016. Toolpushers Supply Co. has seven accounting clerks and a chief accountant. Dep. of Lodball 37:7-16. Accounting clerks for Toolpushers Supply Co. primarily engage in data entry, and Ms. Hindt generally prepared invoices for purchases and sales and coded accounts payable. Dep. of Lodball 124:12-21. Before working at True Companies, Ms. Hindt studied business administration in college. First Am. Compl. 7. Ms. Hindt was paid $14.57 per hour in 2010 and $15.01 per hour in 2012. First Am. Compl. 8.

### TRUE COMPANIES' MOTION FOR SUMMARY JUDGMENT [DOCS. 41 & 42]

True Companies argue summary judgment is proper because the accounting clerk positions under scrutiny did not require substantially equal skill, effort, and responsibility. Defs.' Mem. of Law in Supp. of their Mot. for Summ. J. 14, June 8, 2016, ECF No. 42. True Companies note that the Tenth Circuit does not construe "substantially equal" work broadly

---

[6] A certificate in career accounting is approximately the equivalent of two and a half years of courses in accounting, business, math, and government. Dep. of Kuhn 8:8-9:18.

[7] Ms. Hindt was terminated by True Companies in 2013. Dep. of Lodball 117:25-119:6.

and that the Court's analysis must focus on the actual requirements of the job. *Id.* Additionally, True Companies provide examples where courts have granted summary judgment in favor of employers where plaintiffs have failed to establish a *prima facie* case of substantially equal work and assert the EEOC cannot establish Ken Harris's job was substantially equal to the jobs of Debbie Kuhn and Connie Hindt. *Id.* at 16-18, 19-22.

**EEOC'S RESPONSE [DOCS. 48 & 49]**

The EEOC opposes True Companies' Motion and requests it be denied. Pl. EEOC's Br. in Opp'n to Defs.' Mot. for Summ. J. 1, June 22, 2016, ECF No. 49. The EEOC asserts that all accounting clerks worked for the same establishment despite their assignment to different True Companies because True Oil, LLC pays all of the accounting clerks and because the clerks are monitored by a single controller. *Id.* at 13-14. Furthermore, the EEOC claims summary judgment should be denied as each accounting clerk position requires the same skills and qualifications and accounting clerks have moved to different True Companies. *Id.* at 14-17. Finally, the EEOC posits a question of fact remains as to whether Mr. Harris performed substantially equal work to Ms. Kuhn and Ms. Hindt and that True Companies have not established an affirmative defense. *Id.* at 17-22.

**EEOC'S OBJECTION TO EXHIBITS [DOC. 47] AND TRUE COMPANIES' RESPONSE [DOC. 54]**

The EEOC also objects to exhibits O and P provided by True Companies in support of their Motion for Summary Judgment. EEOC's Objection to Exs. O & P Submitted with Defs.' Mem. in Supp. of their Mot. for Summ. J. 2, June 22, 2016, ECF No. 47. Exhibit O is a document titled "Value Contributed by Ken Harris" and reflects amounts Mr. Harris and Ms. Kuhn were paid in addition to the "value" of Mr. Harris substituting for the chief accountant at True Ranches, LLC. Exhibit P is a hand-drawn "pie chart" demonstrating the

responsibility levels of Mr. Harris, Ms. Kuhn, and Ms. Hindt. Both exhibits were prepared by Dwain Park, the former controller for True Companies. The EEOC argues both exhibits may only be admitted through expert testimony, and Mr. Park is not designated as an expert under Rule 702 of the Federal Rules of Evidence. *Id.* 2-3.

True Companies refute the EEOC's assertion that Mr. Park must be designated as an expert to offer exhibits O and P. Defs.' Resp. to EEOC's Objection to Exs. O and P Submitted with Defs.' Mem. in Supp. of their Mot. for Summ. J. 2, June 29, 2016, ECF No. 54. True Companies assert the documents prepared by Mr. Park reflect his opinion and reflect his rationale about why Mr. Harris was paid a higher wage. *Id.* at 2-3. True Companies therefore argue the exhibits are admissible under Rule 701 of the Federal Rules of Evidence and the Court's broad discretion to allow demonstrative evidence. *Id.* at 3.

### EEOC's Motion for Partial Summary Judgment [Docs. 45 & 46]

In contrast to True Companies' Motion, the EEOC filed a Motion for Partial Summary Judgment on several of True Companies' Affirmative Defenses. Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 1, June 15, 2016, ECF No. 46. Specifically, the EEOC seeks judgment on True Companies' Second, Thirteenth, and Fifteenth Affirmative Defenses identified in True Companies' Answer to Amended Complaint. *Id.* at 6. True Companies' Second Affirmative Defense claims "Plaintiff cannot show or establish by preponderance of the evidence that any identified Plaintiff, of which two are identified at this point (Kuhn and Hindt), were discriminated against on the basis of sex/gender." Defs.' Answer to Am. Compl. 5, Oct. 15, 2015, ECF No. 26. The Thirteenth Affirmative Defense provides "Plaintiff's claims are not made in good faith and are based on a flawed investigation motivated by a directive to prosecute more cases against energy companies in the western

United States." *Id.* at 6. The Fifteenth Affirmative Defense states "[n]o meaningful mediation/conciliation has occurred." *Id.*

The EEOC first argues that True Companies' Second Affirmative Defense is subject to summary judgment as an EPA violation does not require discriminatory intent. Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 6-7. Second, the EEOC asserts the adequacy or propriety of its investigation is irrelevant as the EEOC may initiate a case under the EPA without an investigation and investigations are not subject to judicial review. *Id.* at 8-9. Third, the EEOC claims the Fifteenth Affirmative Defense should not be allowed by the Court because the EPA does not require the EEOC to await conciliation efforts. *Id.* at 9-10. The EEOC further notes it attempted conciliation in this case.[8] *Id.* at 10.

**TRUE COMPANIES' RESPONSE [DOC. 51]**

True Companies concede judgment on the second affirmative defense, noting "the Second Affirmative Defense concerning discriminatory intent is not a defense in this matter given that the EEOC has confirmed that it is now only asserting a claim under the EPA, and not a Title VII discrimination claim." Defs.' Resp. to Pl. EEOC's Mot. for Summ. J. 3, June 24, 2016, ECF No. 51. On their Thirteenth Affirmative Defense, True Companies agree that the EEOC's conduct during its investigation is not a complete defense. *Id.* at 4. However, True Companies claim evidence involving the investigation may be relevant and should be examined under an evidentiary ruling, not a dispositive motion. *Id.* at 5. True Companies also agree that the Fifteenth Affirmative Defense is not a complete defense, but suggest evidence of the conciliation process may be admissible to demonstrate bias by the EEOC. *Id.*

---

[8] The EEOC issued a letter to True Companies requesting True Companies to eliminate allegedly unlawful employment practices. *Id.* at 10.

**RELEVANT LAW**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Mata v. Anderson*, 635 F.d 1250, 1252 (10th Cir. 2011). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citing *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

To determine whether summary judgment is appropriate, the Court views evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *Mumby v. Pure Energy Servs. (USA), Inc*., 636 F.3d 1266, 1269 (10th Cir. 2011). The moving party has the burden of showing no genuine issue of material fact exists. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). However, when the moving party does not have the ultimate burden of persuasion at trial, it may satisfy the burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

To defeat a motion for summary judgment, the non-movant must show more than "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . . there must be evidence on which the jury could reasonably find for the [nonmoving party]."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The nonmoving party must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock  v. Colorado*, 218 F.3d 1205, 1209

10

(10th Cir. 2000). "[E]vidence, including testimony, must be based on more than mere speculation, conjecture or surmise." *Bones* v. *Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Unsubstantiated conclusory allegations carry no probative weight in summary judgment proceedings and do not create a genuine issue of fact. *Phillips* v. *Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992). Evidence to defeat summary judgment must be admissible at trial. *Equality Bank of Evansville v. Suomi*, 836 P.2d 325, 330 (Wyo. 1992).

### RULING OF THE COURT

The issue before the Court is whether the EEOC has established a *prima facie* case under the EPA. The EPA, which was enacted as an amendment to the Fair Labor Standards Act of 1938, prohibits an employer from discriminating against employees by paying differential wages on the basis of gender. 29 U.S.C. § 206(d)(1). Thus, to establish a *prima facie* case under the EPA, the plaintiff has the burden to demonstrate that (1) a single employer (2) employed male and female employees who "perform[ed] work which was substantially equal . . . considering the skills, duties, supervision, effort, and responsibilities of the jobs;" (3) in the same general working conditions; and (4) paid either male or female employees higher wages.[9] 29 U.S.C. § 206(d)(1); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993); *Brennan v. Goose Creek Consol. Indep. Sch. Dist.*, 519 F.2d 53, 56-57 (5th Cir. 1975). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendants to prove to the jury that the wage disparity between male and female employees

---

[9] Elements of an EPA claim differ from a claim brought under Title VII, as Title VII requires a plaintiff to demonstrate discriminatory intent. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1361 n.3 (10th Cir. 1997).

existed due to a "(1) seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; [or] (4) a disparity based on any factor other than sex."[10] *Id.*

True Companies do not dispute the accounting clerks worked under the same conditions and that Mr. Harris was paid a higher wage than Ms. Kuhn and Ms. Hindt. True Companies also does not suggest an entitlement to summary judgment on an affirmative defense. Accordingly, the Court's analysis will first focus on whether True Companies constitute a single employer. Second, the Court will examine whether a material question of fact exists as to whether the work performed by Mr. Harris, Ms. Kuhn, and Ms. Hindt was substantially equal. Finally, the Court will address the EEOC's evidentiary objections and Motion for Partial Summary Judgment on True Companies' Affirmative Defenses.

### SINGLE EMPLOYER ANALYSIS

True Companies contend that the three companies Mr. Harris, Ms. Kuhn, and Ms. Hindt were assigned to are separate entities, which prevents the EEOC from establishing a *prima facie* case. Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 4-6, 13. Numerous circuits have held nominally separate companies may be considered a single employer under the EPA. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (citing *Brennan*, 519 F.2d at 57)). Courts in the Tenth Circuit consider whether nominally separate entities are a single employer by examining the "(1) interrelations of operations; (2) common management, (3) centralized control of labor relations; and (4) common ownership and

---

[10] "This is not to say that an employer may never be entitled to summary judgment on an EPA claim if the plaintiff establishes a *prima facie* case." But, because the employer's burden in an EPA claim is one of ultimate persuasion, "in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000)).

financial control." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1322 (10th Cir. 2004)

(citing *Bristol v. Bd. of Cnty. Comm'rs of the Cnty of Clear Creek*, 312 F.3d 1213, 1220

(10th Cir. 2002) (en banc)).

Here, the EEOC has established a genuine issue of material fact as to whether True

Ranches, LLC, True Drilling, and Toolpushers Supply Co. are a single employer. Deposition

testimony establishes that the operations of True Companies are interrelated as certain True

Companies, such as Black Hills Trucking, Inc., often perform work for other True

Companies. Dep. of Herbert 25:8-23; Dep. of Kuhn 29:8-15. Additionally, True Companies

are commonly managed and owned by the True Family, and partners Hank and David True

are responsible for major financial decisions. Dep. of David True 13:19-22, 17:11-12, 20:14-

15, 22:13-14, 24:4-7, 26:3-4, 27:2-3, 28:2-3. Although the accounting clerks are assigned to

different True Companies, True Oil, LLC maintains centralized control of labor relations

through the employment of all accounting clerks, chief accountants, and the controller, who

ultimately manages the entire accounting department. Defs.' Answers to Pl.'s First Set of

Reqs. for Admis. 8-9, 18. Accordingly, the Court finds sufficient evidence for a jury to

determine whether True Companies constitute a single employer.

*SUBSTANTIALLY EQUAL WORK ANALYSIS*

True Companies also assert the EEOC has not established a *prima facie* case because

it has not demonstrated that Ms. Kuhn and Ms. Hindt performed "substantially equal" work.

Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. 8, 14-22. As stated above, a plaintiff must

demonstrate the employer employed male and female employees who "perform[ed] work

which was substantially equal . . . considering the skills, duties, supervision, effort, and

responsibilities of the jobs" to establish a *prima facie* case under the EPA. *Tidwell*, 989 F.2d

at 409.[11] "Skill includes such considerations as experience, training, education, and ability." *E.E.O.C. v. Cent. Kan. Med. Ctr.*, 705 F.2d 1270, 1272 (10th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 n.10 (1988). "Effort refers to the physical or mental exertion necessary to the performance of a job." *Id.* "Responsibility concerns the degree of accountability required in performing a job." *Id.*

Although the work performed does not need to be identical, equal work is not construed broadly by the Tenth Circuit. *Corning Glass Works v. Brennan*, 417 U.S. 188, 203 n.24 (1974); *Sprague*, 129 F.3d at 1364. "[A] failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." *Sprague*, 129 F.3d at 1364. However, employers cannot avoid EPA liability by identifying minor distinguishing features in the tasks of the job. *Brennan v. S. Davis Cmty. Hosp.*, 538 F.2d 859, 861 (10th Cir. 1976). The crucial inquiry centers on the actual work performed, not the title or classification of the job. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015).[12] Additionally, despite the factual nature of EPA cases, numerous courts throughout the 10th Circuit have dismissed EPA claims on summary judgment. *See Sprague*, 129 F.3d at 1364; *Lewis v. D.R. Horton, Inc.*, 375 Fed. App'x 818, 824 (10th Cir. 2010); *Daniels v. United Parcel Serv., Inc.*, 797 F. Supp. 2d 1163, 1192 (D. Kan. 2011); *Clayton v. Vanguard Car Rental U.S.A., Inc.*, 761 F. Supp. 2d 1210,

---

[11] The Court notes persuasive precedent suggests Congress expressly intended for work to be equal and for the EPA to apply only to closely similar positions. *Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 333-34 (4th Cir. 2004) ("In enacting the EPA, Congress chose the word 'equal' over the word 'comparable' in order 'to show that the jobs involved should be virtually identical."). "The proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman (or anything more, if the jobs are truly identical) and there are no skill differences." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771-72 (7th Cir. 2007).

[12] Courts generally focus on whether the jobs are heterogeneous and leave the decision to award higher pay for diverse work in the domain of employers. *Sims-Fingers*, 493 F.3d at 771.

1266 (D.N.M. 2010); *Thompson v. City of Albuquerque*, 950 F. Supp. 1098, 1104 (D.N.M. 1996).

District courts examining EPA claims examine all of the facts and circumstances to make a practical judgment. *Brickey v. Employers Reassurance Corp.*, 293 F. Supp. 1227, 1230-31 (D. Kan. 2003). In *Thompson*, a female veterinarian brought an EPA claim against her employer, asserting two male veterinarians were unfairly paid a higher wage due to gender. 950 F. Supp. at 1100. All three employees were Doctors of Veterinary Medicine, licensed veterinarians, and had the same job title. *Id.* at 1101. However, the male veterinarians were responsible for the long-term care of exotic zoo animals while the female veterinarian primarily dealt with the short-term care of domestic animals. *Id.* at 1103. The male veterinarians also worked in a supervisory role and utilized complex equipment associated with exotic species. *Id.* Despite these differences, the female veterinarian asserted that the job responsibility of each veterinarian was the same: the medical care of animals. *Id.* The court ultimately found the female veterinarian failed to establish a *prima facie* case under the EPA, noting that "it does not suffice to show that all three employees have the same academic degree, the same job [title], and responsibility for the health of . . . animals" and that the male veterinarians were "called upon regularly to exercise more skill." *Id.* at 1103-04; *see also Clayton*, 761 F. Supp. at 1269-70 ("The Court therefore finds that, even though [the plaintiff] has presented evidence that the general duties of [the employer's] general managers are the same, this evidence does not establish a prima-facie case that the other general managers performed substantially equal work under the EPA.").

The Court finds no genuine issue of material facts exists as the EEOC has failed to present evidence to establish the work performed by Mr. Harris, Ms. Kuhn, and Ms. Hindt

was "substantially equal." The record demonstrates Mr. Harris's job duties were vastly different from the work performed by Ms. Kuhn and Ms. Hindt. Mr. Harris, as an accounting clerk for True Ranches, LLC, operated on a cash rather an accrual basis, worked with Asset Keeper software to depreciate assets, did accounting for cow-calf operations, maintained inventory, monitored accounts receivable and accounts payable, managed payroll deductions, substituted for the chief accountant, tracked vehicle registration for True Ranches, LLC, and purchased equipment. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18. In contrast, Ms. Kuhn worked on an accrual basis and maintained time for welders and mechanics, oversaw accounts payable but not accounts receivable, recorded auditing expenses, tracked invoicing, issued vouchers, utilized Microsoft Excel, and monitored sales tax reconciliations. Dep. of Kuhn 36:1-23. Ms. Hindt engaged in data entry, prepared invoices for purchases and sales, and coded accounts payable. Dep. of Lodball 124:12-21. These facts indisputably indicate Mr. Harris's job required more skill and effort than the jobs of Ms. Kuhn and Ms. Hindt. While Ms. Kuhn and Ms. Hindt were generally responsible for accounts payable, Mr. Harris was responsible for accounts payable and accounts receivable. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18. Mr. Harris, unlike Ms. Kuhn and Ms. Hindt, operated Asset Keeper, which tasked him with monitoring the deprecation of ranch assets. Dep. of Harris 23:6-30:22. Ms. Kuhn and Ms. Hindt did not operate Asset Keeper as that duty usually fell under the tasks of the chief accountant. Dep. of Park 152:22-153:5, 153:25-154:21. Finally, Mr. Harris took on the duties of the chief accountant while Ms. Kuhn and Ms. Hindt solely worked as accounting clerks. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18. The differences in each accounting clerk's position are more than minor distinguishing details; the differences range from style of accounting (cash vs. accrual) to software utilized (Asset

16

Keeper vs. Microsoft Excel).  As none of this testimony is in dispute, the EEOC has failed to establish Ms. Kuhn and Ms. Hindt provided work that was substantially equal to the work of Mr. Harris.

Uncontroverted testimony also established Ms. Kuhn and Ms. Hindt were primarily responsible for data entry while Mr. Harris's duties went beyond data entry to include vehicle registration, communications with True Companies managers, and making payments on ranch supplies. Dep. of Park 154:22-155:20; Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18; Dep. of Lodball 172:19-22. Ms. Hindt's job consisted of approximately 75% data entry, and 75% tasks completed by Ms. Kuhn utilize Microsoft Excel, a data entry program. Dep. of Lodball 172:19-22; Dep. of Calkins 120:16-20. The differences in the work performed by Mr. Harris, Ms. Kuhn, and Ms. Hindt are further illustrated by testimony suggesting that accounting clerks were not interchangeable, and that an accounting clerk transferring to another true company would need to complete a period of training. Dep. of Calkins 39:3-25; Dep. of Kuhn 81:15-18, Apr. 4, 2016. None of these facts indicate substantially equal work by the three employees at issue.

The record before the Court also establishes Mr. Harris maintained a higher level of responsibility than Ms. Kuhn or Ms. Hindt. As noted, "[r]esponsibility concerns the degree of accountability required in performing a job." *Cent. Kan. Med. Ctr.*, 705 F.2d at 1272. Mr. Harris was the sole accounting clerk in the two-person accounting office for True Ranches, LLC. Dep. of Rutz 60:8-61:12. Conversely, Ms. Kuhn worked in a five-person accounting department and Ms. Hindt worked in an eight-person accounting department. Dep. of Calkins 18:4-8; Dep. of Lodball 37:7-16. Furthermore, undisputed testimony demonstrates Mr. Harris consistently substituted as the chief accountant for True Ranches, LLC. During his time

substituting as the chief accountant, Mr. Harris answered the questions of True Companies owners and fulfilled all of the duties of the chief accountant except the final book closures. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18. These facts indicate Mr. Harris maintained increased responsibility for the accounting of True Ranches, LLC. No evidence suggests Ms. Kuhn or Ms. Hindt ever performed the duties of a chief accountant. Dep. of Calkins 82:25-83:4; Dep. of Park 173:4-19 Thus, there is no genuine issue of material fact: Mr. Harris's job consistently required more responsibility than the jobs of Ms. Kuhn or Ms. Hindt.

The EEOC asks the Court to construe the evidence broadly by noting that the job title, job description, and skill requirements for the accounting clerk position are the same.  Br. in Opp'n to Defs.' Mot. for Summ. J. 14, 17-18. However, this Court may not construe the definition of substantially equal work broadly, and the EEOC's argument mirrors the arguments rejected by district courts in *Thompson* and *Clayton*. *Sprague*, 129 F.3d at 1364. In *Thompson* and *Clayton*, the courts rejected the argument that an identical job title and the same general job purpose established substantially equal work sufficient for an EPA claim. *Thompson*, 950 F. Supp. at 1103-04; *Clayton*, 761 F. Supp. at 1269-70. Here, the EEOC asserts that Mr. Harris, Ms. Kuhn, and Ms. Hindt were all accounting clerks responsible for data entry and accounts receivable. In a general sense, that assertion is true, but fails to account for the undisputed facts that Mr. Harris worked for True Ranches, LLC rather than True Drilling, LLC or Toolpushers Supply Co., entered data on a cash basis instead of an accrual basis, was responsible for substituting as the chief accountant, utilized Asset Keeper, tracked vehicle registration for True Ranches, LLC, and purchased ranch equipment. Dep. of Harris 23:6-30:22; Dep. of Rutz 61:13-64:18; Dep. or Park 115:15-116:6.. No facts suggest

Ms. Kuhn or Ms. Hindt shared any of these, or comparable, responsibilities. Therefore, there is no issue of material fact as to whether the work performed by Mr. Harris, Ms. Kuhn, and Ms. Hindt was substantially equal. The EEOC's claim is dismissed with prejudice.

### *EVIDENTIARY OBJECTIONS AND MOTION FOR PARTIAL SUMMARY JUDGMENT*

The EEOC objects to Exhibits O and P included with True Companies' Motion for Summary Judgment. EEOC's Objection to Exs. O & P Submitted with Defs.' Memo. in Supp. of their Mot. for Summ. J. 2. These exhibits are the valuation chart and hand-drawn "pie chart" prepared by former controller Dwain Park. Evidence submitted in support of a motion for summary judgment must be admissible at trial. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). Under Rule 701 of the Federal Rules of Evidence, a lay witness may only offer testimony "rationally based on the witness's perception . . . helpful to clearly understand the witness's testimony . . . and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 702 governs expert testimony and limits testimony to "the expert's scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony may only be offered if the witness is properly designated as an expert. Fed. R. Civ. P. 26(a)(2)(A).

The Court overrules the objection made to the hand-drawn "pie chart" prepared by Mr. Park. The pie chart is not based on scientific, technical, or other specialized knowledge. Rather, the chart is based on Mr. Park's perception of the accounting departments, their members, and the responsibility of those members that he witnessed during his time as the controller for True Companies. Accordingly the chart is proper under Rule 701 as it is "rationally based on the witness's perception" and helpful to understand Mr. Park's

testimony about the responsibilities of Mr. Harris, Ms. Kuhn, and Ms. Hindt. Fed. R. Evid. 701.[13]

In contrast, the Court sustains the objection made to the valuation chart. That chart is based on technical or specialized knowledge as it attempts to compute a numeric value for the services of Mr. Harris in comparison to Ms. Kuhn. Instead of explaining Mr. Park's testimony, the valuation chart attempts to prove, quantitatively, that Mr. Harris's added more value and subsequently demonstrated greater skill, effort, or responsibility. If the EEOC had established a prima facie case, this chart would have been offered by a non-expert to prove a fact in issue in violation of Rule 702 of the Federal Rules of Evidence and Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. Accordingly, the Court did not consider this exhibit in reviewing True Companies' Motion for Summary Judgment.

Finally, as a result of this order dismissing the EEOC's case, the EEOC's Motion for Partial Summary Judgment on True Companies' Affirmative Defenses is denied as moot.

## CONCLUSION

The EEOC has failed to establish a prima facie case under the EPA. Although a genuine issue of material facts exists as to whether True Companies constitute a single employer, the EEOC has failed to present evidence that the work of Mr. Harris, Ms. Kuhn, and Ms. Hindt required substantially equal skill, effort, or responsibility. The uncontroverted facts demonstrate Mr. Harris operated in a two person accounting department on a cash rather than accrual basis, operated Asset Keeper, and regularly substituted for the chief accountant. Ms. Kuhn and Ms. Hindt did not perform any of those functions. The Court

---

[13] Despite the admissibility of this exhibit, the Court notes that it did not rely on the pie chart in reaching its decision. The Court relied on the deposition testimony and other documentation cited throughout this Order.

grants True Companies' Motion for Summary Judgment on the sole claim and dismisses the case with prejudice.

THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment [Doc. 41] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Objection is OVERRULED IN PART AND SUSTAINED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. 45] is DENIED AS MOOT.

Dated this 18th day of July, 2016.

Kelly H. Rankin
U.S. Magistrate Judge